# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

LARRY LEE JAMISON,

        Petitioner,

v.                                                    Case No. 3:22-cv-312-TJC-LLL

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS
and THE FLORIDA ATTORNEY
GENERAL,

        Respondents.

_____

## ORDER

### I.    Status

Petitioner, an inmate of the Florida penal system, is proceeding pro se on a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1) with exhibits (Doc. 1-1 to 1-11). Petitioner challenges a state court (Duval County, Florida) judgment of conviction for aggravated battery with a deadly weapon and leaving the scene of an accident involving injury. Doc. 1 at 2. He is serving a fifteen-year prison sentence.[1] Respondents filed a Response (Doc. 6) with

---

[1]  See Fla. Dep't of Corrs., Offender Information Search, available at https://fdc.myflorida.com/OffenderSearch/Search.aspx (last visited Feb. 19, 2025).

exhibits (Docs. 6-1 to 6-10).[2] Petitioner filed a Reply (Doc. 7). This case is ripe for review.[3]

## II.   <u>Governing Legal Principles</u>

### A. Standard Under § 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016) (explaining AEDPA deference), <u>abrogation in part on other grounds recognized by</u> <u>Smith v. Comm'r, Ala. Dep't of Corr.</u>, 67 F.4th 1335, 1348 (11th Cir. 2023). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

---

[2] Petitioner and Respondents provide some of the same exhibits. The Court will cite all exhibits as docketed by Respondents, using the document and page numbers as assigned by the Court's electronic case management system.

[3] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

<u>Wilson v. Sellers</u>, 584 U.S. 122, 125–26 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." <u>Id.</u> § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253–54 (11th Cir. 2013) (internal citations modified) (emphasis in original).

## B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's

4

performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold."

5

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (internal quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105).

### III.  Procedural History

By information filed on March 19, 2018, the State of Florida charged Petitioner with aggravated battery with a deadly weapon (Count 1) and leaving the scene of a crash involving injury (Count 2). Doc. 6-1 at 26. According to the arrest report, Petitioner struck a pedestrian with his car and "left the scene." Id. at 15. The pedestrian was Petitioner's ex-girlfriend, and she told the officer that she and Petitioner "had previous domestic violence incidents." Id. The incident, which occurred outside the church Petitioner and his ex-girlfriend attended, was captured on video surveillance, which the reviewing officer

6

summarized as follows: "[Petitioner] hit [the victim] with [his] vehicle. [Petitioner] exited the vehicle and said something to [the victim,] entered his vehicle[,] and left the scene with out [sic] attending to the injured." Id.

With the assistance of retained counsel, Petitioner proceeded to trial on November 13, 2018. Doc. 6-2 at 4–5. Before trial started, the judge asked the parties whether Petitioner had confessed, or whether any of his statements would be introduced into testimony. Id. at 13. The prosecutor responded, "Your Honor, post Miranda[4] . . . [Petitioner] stated that he did not hit anyone." Id. Defense counsel told the judge there was no "legal basis [upon which] to file [a] Motion to Suppress" Petitioner's post-Miranda statement. Id. at 13–14. The judge also asked about witnesses for the defense, and Petitioner agreed that he "did not give [his attorney] any other names [besides himself] of people that [he] wanted [the attorney] to call [as a witness on his behalf]." Id. at 14

For the State, the victim and two officers testified generally along the lines of what was in the arrest report. See id. at 33, 38–39, 41–42, 59–60, 65–66. Officer Collins testified that when he first encountered Petitioner, he (Collins) "read [Petitioner] his Miranda [rights]," and Petitioner thereafter told him what happened from his perspective. Id. at 83. The victim testified that

---

[4] Miranda v. Arizona, 384 U.S. 436, 478–79 (1966) (explaining the minimal procedural safeguards officers must employ when questioning a suspect, including warning him that he has the right to remain silent and to have an attorney present).

Petitioner exited his car after hitting her and said that "he was going to kill [her] and get away with it," and then he "sped off." Id. at 41–42.

Petitioner testified on his own behalf, claiming that he accidentally hit the victim because he dropped his cell phone and was looking for it instead of at the road. Id. at 74–75. He explained that he exited his car and said to the victim, "[Y]ou didn't see me coming . . . ?" Id. at 75. He further testified that he told the victim to let him help her, but she told him to "leave," so he did. Id. He then parked his car, went inside the church, and told an usher he needed help because he had "just hit somebody in the parking lot." Id. The usher allegedly told him to have a seat, and she would "get [him] help." Id. On cross-examination, Petitioner testified that he tried to swerve to avoid hitting the victim, but he conceded the video showed he swerved "towards the victim," not away from her. Id. at 77.

On rebuttal, the State re-called Officer Collins, who testified that he read Petitioner his Miranda rights, after which Petitioner said that he drove to church, parked his car, and went inside to hear the sermon. Id. at 83. Officer Collins testified that Petitioner did not mention having been in an accident and specifically "said he didn't hit anyone." Id. As to Petitioner's demeanor, Officer Collins testified, "[Petitioner] was calm. He was wondering why we pulled him out of church as if nothing happened." Id. at 83–84.

On November 15, 2018, after deliberating for less than one hour, the jury

8

returned guilty verdicts on both Counts. Doc. 6-1 at 57–59, 82. On December 5, 2018, the trial court entered judgment and sentenced Petitioner to a term of fifteen years on Count 1 and a concurrent term of five years on Count 2. Id. at 82, 85–87, 100. Through appointed counsel, Petitioner filed a direct appeal in Florida's First District Court of Appeal. Id. at 105, 109. Counsel submitted an Anders[5] brief, contending there was no "good faith [argument] that reversible error occurred [in the trial court]." Doc. 6-3 at 9. Petitioner filed a pro se brief. Doc. 6-5 at 2. The First DCA per curiam affirmed without a written opinion. Doc. 6-6 at 3.

Proceeding pro se, Petitioner filed in the trial court a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, alleging five grounds of ineffective assistance of counsel. Doc. 6-7 at 5. The trial court summarily denied Petitioner's Rule 3.850 Motion without an evidentiary hearing. Id. at 44. With the assistance of counsel, Petitioner appealed. Doc. 6-8 at 2. The First DCA per curiam affirmed without a written opinion and issued its mandate. Doc. 6-10 at 2–3.

---

[5] Anders v. California, 386 U.S. 738, 744 (1967) (providing that court-appointed appellate counsel must undertake a "conscientious examination" of the trial record and, if counsel concludes based on that examination that an appeal would be "wholly frivolous," he must so advise the court, request permission to withdraw, and file "a brief referring to anything in the record that might arguably support the appeal").

## IV.   <u>Analysis</u>

As in his Rule 3.850 Motion, in his Petition before this Court, Petitioner raises five Grounds of ineffective assistance of trial counsel.

### A. Ground One

Petitioner argues his trial counsel was ineffective for failing to object or move for mistrial when the State introduced "improper" rebuttal testimony. Doc. 1 at 6–8. Petitioner contends, "Officer Collins was called under the pretext of a rebuttal witness but instead he was used to reopen the State's case." <u>Id.</u> at 8. He further contends his attorney should have called him (Petitioner) as a sur-rebuttal witness to refute Officer Collins's rebuttal testimony. <u>Id.</u>

Respondents argue Petitioner exhausted only part of this claim, saying he did not raise in the trial court the sub-claim that counsel failed to call him as a sur-rebuttal witness. Doc. 6 at 14–15. To the contrary, Petitioner raised this same claim as ground one in his Rule 3.850 Motion, arguing that Officer Collins offered new—not rebuttal—testimony when the State re-called him, and his attorney was ineffective for not calling him as a sur-rebuttal witness. Doc. 6-7 at 15. Accordingly, the claim raised in Ground One is exhausted.

In its order on Petitioner's Rule 3.850 Motion, the trial court summarized the <u>Strickland</u> standard, noting that a defendant will have a difficult time satisfying the prejudice prong when "there is overwhelming evidence of [his] guilt." <u>Id.</u> at 45. In accordance with the <u>Strickland</u> standard, the trial court

denied Petitioner's ineffective assistance of counsel claim, finding Officer Collins's rebuttal "testimony was squarely within the scope of proper rebuttal evidence." <u>Id.</u> at 48. The trial court ruled as follows:

> In Ground One of his motion, [Petitioner] argues Defense Counsel was ineffective for failing to object to Officer Collins's testimony. [Petitioner] contends that Officer Collins's testimony went beyond the scope of what is permitted of a rebuttal witness.

> "Rebuttal evidence explains or contradicts material evidence offered by a defendant." <u>Britton v. State</u>, 414 So. 2d 638, 639 (Fla. 5th DCA 1982); <u>see also</u> <u>Driscoll v. Morris</u>, 114 So. 2d 314, 315 (Fla. 3d DCA 1959) ("Generally speaking, rebuttal testimony which is offered by the plaintiff is directed to new matter brought out by evidence of the defendant and does not consist of testimony which should have properly been submitted by the plaintiff in his case-in-chief."). Here, [Petitioner's] version of events at trial was that he accidently struck the victim with his car. The State called Officer Collins to rebut this testimony, as [Petitioner] had told Officer Collins that [he] never struck the victim with his car (accidently or otherwise). Officer Collins's testimony was squarely within the scope of proper rebuttal evidence. As such, Defense Counsel had no basis to object to the testimony and was not ineffective for failing to do so. <u>See</u> <u>Hitchcock v. State</u>, 991 So. 2d 337, 361 (Fla. 2008) ("Counsel cannot be deemed ineffective for failing to make a meritless objection.").

> Because the record conclusively refutes the claim [Petitioner] raises therein, the Court denies Ground One of [Petitioner's] motion.

<u>Id.</u> (internal record citations omitted). The trial court did not address Petitioner's argument that his attorney was ineffective for not calling him as a

sur-rebuttal witness, see id., a point Petitioner noted in his brief on appeal, Doc. 6-8 at 26–27. As he does in his Petition, in his appellate brief, Petitioner argued that had his attorney called him to offer sur-rebuttal testimony, he would have "vehemently disagree[d]" that he told Officer Collins he did not hit anyone, "which may have swayed the jury to decide the case in [his] favor." Doc. 1 at 9; Doc. 6-8 at 25.

The First DCA per curiam affirmed the trial court's denial without a written opinion. Doc. 6-10 at 3. The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's denial of Petitioner's claim was neither contrary to nor an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground One is denied.

### B. Ground Two

Petitioner argues his trial counsel was ineffective for failing to object to Officer Collins's testimony about Petitioner's post-Miranda comments. Doc. 1 at 11–12. Petitioner raised this claim in his Rule 3.850 Motion. Doc. 6-7 at 20. The trial court denied the claim, concluding Petitioner waived his right to remain silent:

In Ground Two, [Petitioner] claims Defense Counsel was ineffective for failing to object to a portion of Officer Collins's testimony. [Petitioner] alleges the testimony at issue was an improper comment on his right to remain silent. In full context, the testimony [Petitioner] takes issue with reads:

Q [the State]: And what did he say happened?

A [Officer Collins]: He told me that he was traveling [to church]. . . . He . . . parked and went inside the sanctuary.

Q: Did he mention if he hit anyone?

A: He said he didn't hit anyone.

Q: Did he mention that there was a crash?

A: No, ma'am.

Q: Did he say if he needed assistance?

A: No, ma'am.

The record is clear that Officer Collins advised [Petitioner] of his <u>Miranda</u> rights and that [Petitioner] nevertheless chose to respond to Officer Collins's questions. On these facts, [Petitioner] waived his right to remain silent. <u>See, e.g.</u>, <u>Downs v. Moore</u>, 801 So. 2d 906, 911–12 (Fla. 2001) (finding no error in the State's question or in a police officer's answer because the defendant "waived his constitutional rights and expressed a desire to talk to the police."). Thus, Officer Collins's testimony was not an improper comment on [Petitioner's] silence and Defense Counsel was not ineffective for failing to object in the manner [Petitioner] now advocates. <u>See</u> <u>Hitchcock</u>, 991 So. 2d at 361. Furthermore, [Petitioner] cannot demonstrate the prejudice that <u>Strickland</u> requires. The inculpatory portion of [Petitioner's] conversation with Officer Collins' [sic] was not his lack of an answer to any

13

questions; rather, it was his assertion (which [Petitioner] himself later contradicted with his trial testimony) that he did not strike the victim with his car. In light of the evidence adduced at trial, [Petitioner] cannot demonstrate there is a reasonable probability that the trial's outcome turned on the portion of Officer Collins's testimony to which he now objects.

For the reasons set forth above, the Court denies Ground Two of [Petitioner's] motion.

Id. at 49–50 (internal record citation omitted).

The First DCA per curiam affirmed the trial court's denial without a written opinion. Doc. 6-10 at 3. The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's denial of Petitioner's claim was neither contrary to nor an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). See also Miranda, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment …."). Ground Two is denied.

## C.    Ground Three

Petitioner argues his trial counsel was ineffective for failing to investigate and call as an exculpatory witness the church usher who Petitioner claims would have testified that Petitioner "came into the church requesting help

because he had just hit someone in the parking lot . . . ." Doc. 1 at 13–15. Petitioner raised this claim in his Rule 3.850 Motion. Doc. 6-7 at 25. The trial court denied the claim under the second prong of <u>Strickland</u>:

> In Ground Three, [Petitioner] alleges that Defense Counsel should have called an usher from the church as a witness a trial. In sum, [Petitioner] speculates that the usher would have testified that [he] came inside the church to request help for the victim.

> Even if, <u>arguendo</u>, the usher would have testified in exactly the manner [Petitioner] describes in his motion, there is no reasonable probability the testimony would have altered the trial's outcome. In sum, [Petitioner] ran over his ex-girlfriend with his car and the incident was captured by a security camera. At a time when he did not know the surveillance recording existed, [Petitioner] initially denied that he struck the victim at all. The victim testified about [Petitioner's] comments after he struck her, including his threat that he was going to kill her and get away with it. On the facts presented at trial, there is no reasonable probability that the hypothetical usher testimony would have changed the jury's verdicts. And in the absence of such reasonable probability, [Petitioner] cannot demonstrate the prejudice that <u>Strickland</u> demands. Accordingly, the Court denies Ground Three of his motion.

<u>Id.</u> at 50.

The First DCA per curiam affirmed without a written opinion. Doc. 6-10 at 3. The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's denial

of Petitioner's claim was neither contrary to nor an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Three is denied.

### D. Ground Four

Petitioner argues his trial counsel was ineffective for failing to move for judgment of acquittal on Count 2 (leaving the scene of an accident). Doc. 1 at 16–17. Petitioner explains the evidence, including video surveillance, showed that he stopped after he hit the victim, got out of his car and spoke with the victim, then "parked his car in the nearest available parking space . . . and walked into the church," where he told the usher he hit someone. Id. at 17.

Petitioner raised this claim in his Rule 3.850 Motion. Doc. 6-7 at 28. The trial court denied the claim, highlighting the video evidence, which showed that Petitioner "left the scene." Id. at 51. The court ruled in full as follows:

> In Ground Four, [Petitioner] argues Defense Counsel was ineffective because he failed to tailor his judgment of acquittal motions to the State's charge of leaving the scene of a crash involving injury (Count Two).
>
> "The purpose of a motion for judgment of acquittal is to challenge the legal sufficiency of the evidence . . . ." Cunningham v. State, 385 So. 2d 721, 722 (Fla. 3d DCA 1980). "In moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the State that the factfinder might fairly infer from the evidence." State v. Odom, 56 So. 3d 46,

16

49 (Fla. 5th DCA 2011). "The trial court should not grant a motion for judgment of acquittal unless there is <u>no view</u> of the evidence which the jury might take favorable to the opposite party that can be sustained under the law." <u>McBride v. State</u>, 7 So. 3d I146, 1148 (Fla. 2d DCA 2009) (emphasis added and internal quotations omitted).

Here, there is no reasonable probability the trial court would have granted the JOA motion, regardless of how specifically or ardently Defense Counsel argued in favor of it. In addition to the other evidence presented at trial, the Court again notes that a surveillance camera recorded Defendant's actions, including how he left the scene very shortly after running over the victim with his car. Especially when viewed in a light most favorable to the State, this evidence undermined any possibility of prevailing on a JOA motion. And it is obvious that Defense Counsel was not ineffective for failing to craft a meritless motion. <u>See</u> <u>Whitted v. State</u>, 992 So. 2d 352, 353 (Fla. 4th DCA 2008) ("Counsel was not ineffective for failing to file a motion sure to be denied."). Accordingly, the Court denies Ground Four of [Petitioner's] motion.

<u>Id.</u>

The First DCA per curiam affirmed without a written opinion. Doc. 6-10 at 3. The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's denial of Petitioner's claim was neither contrary to nor an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground

Four is denied.

### E. Ground Five

Petitioner argues his trial counsel was ineffective for failing to object to the prosecutor's alleged improper statements during closing argument. Doc. 1 at 19–20. He contends the prosecutor improperly (1) injected his personal beliefs into the closing by saying the evidence permitted the conclusion that Petitioner "intended to hit [the victim]," as demonstrated by the fact that Petitioner "never attempted to avoid [hitting her]" and "was scared"; (2) mischaracterized the evidence by saying the victim "trie[d] to run out of the way of [the] car"; and (3) improperly commented on Petitioner's right to remain silent. Id.

Respondents argue Petitioner raised only the first two sub-claims in the state court. Doc. 6 at 30, 33. Indeed, in ground five of his Rule 3.850 Motion, Petitioner did not argue the prosecutor improperly commented on his right to remain silent. See Doc. 6-7 at 33–34. Thus, Petitioner only partially exhausted the claim raised in Ground Five of his Petition, and he fails to show cause for or prejudice to overcome the procedural bar as to the unexhausted sub-claim.

As to the first two sub-claims, which Petitioner exhausted, the trial court concluded as follows:

> In Ground Five, [Petitioner] argues Defense Counsel should have objected to portions of the State's closing argument to the jury. Specifically, [Petitioner] takes issue with the prosecutor's assertions that [he] intentionally hit the victim with his car. The purpose of

closing argument is to review the evidence adduced at trial and to illuminate the reasonable inferences the jury may draw from that evidence. <u>Bertolotti v. State</u>, 476 So. 2d 130, 134 (Fla. 1985). Lawyers are afforded wide latitude during closing argument. <u>Breedlove v. State</u>, 413 So. 2d 1, 8 (Fla. 1982). Counsel may "argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." <u>Miller v. State</u>, 926 So. 2d 1243, 1254–55 (Fla. 2006).

The Court finds nothing improper about the comments that [Petitioner] cites in his motion. All the comments at issue comfortably fall within the wide latitude that the law affords to counsel during closing argument. Defense Counsel had no good faith legal basis to object to the comments and was not ineffective for failing to do so. <u>See</u> <u>Hitchcock</u>, 991 So. 2d at 361 ("Counsel cannot be deemed ineffective for failing to make a meritless objection."). Moreover, in light of the overwhelming evidence of [Petitioner's] guilt, there is no reasonable probability that the result of [Petitioner's] trial turned on the State's closing argument. For these reasons, the Court denies Ground Five of [Petitioner's] motion.

<u>Id.</u> at 51–52.

The First DCA per curiam affirmed the trial court's denial without a written opinion. Doc. 6-10 at 3. The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's adjudication of the claim was neither contrary to nor an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts given the evidence presented to the

state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Five is denied.

Accordingly, it is

**ORDERED**:

1.     The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.     If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

3.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

---

[6] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335–36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of March, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

Jax-6
c:
Larry Lee Jamison
Counsel of Record